**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**BRIAN BOURNE,**

                **Petitioner,**            **CIVIL ACTION NO. 07-CV-15247-DT**

     **vs.**

                                   **DISTRICT JUDGE PAUL D. BORMAN**

**CINDI CURTIN,**            **MAGISTRATE JUDGE MONA K. MAJZOUB**

                **Respondent.**

_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:** This Court recommends that Petitioner's Petition for Writ of

Habeas Corpus (Docket no. 1) be **DENIED**.

**II.**    **REPORT:**

       **A.**    **Procedural History and Claims**

      A jury convicted Petitioner of first degree felony murder, murder of a police officer in the

course of his duties, Mich. Comp. Laws § 750.316(1)(c), in Wayne County Circuit Court.[1] (Docket

no. 1 at 1). The court sentenced Petitioner on October 15, 2002 to prison for life without parole.

(*Id.*). Petitioner was represented at trial by David Cripps and Gabi Silver. (*Id.*).

      The Michigan Court of Appeals affirmed Petitioner's case on appeal by an opinion

addressing his grounds for relief. (*Id.*). He was represented on appeal by attorney Michael

---

[1] The jury also convicted Petitioner of second-degree murder as a lesser included offense of a first-degree premeditated murder charge which Petitioner was charged with alternatively to the felony murder charge, but the trial court vacated that conviction at sentencing. (Docket no. 1 ex. 2 at 1).

McCarthy. (*Id*.). The Michigan Supreme Court denied leave to appeal on August 31, 2004 because the court was not persuaded that the questions presented should be reviewed. (*Id*.).

Petitioner then filed a Motion for Relief from Judgment in the trial court which was denied by opinion without a hearing on August 19, 2005. (Docket no. 1 ex. 4). Petitioner's motion for reconsideration was denied as well on April 6, 2006. (*Id*. ex. 5). The Michigan Court of Appeals denied leave to appeal on March 30, 2007 "under MCR 6.508(D)." (*Id*. ex. 6). The Michigan Supreme Court denied leave to appeal on November 29, 2007 also "under MCR 6.508(D)." (*Id*. ex. 7).

Petitioner then filed the present federal habeas petition on December 10, 2007. (Docket no. 1). Respondent filed a Response brief on June 24, 2008. (Docket no. 6). Petitioner filed a Reply on August 1, 2008. (Docket no. 8). This matter has been referred to the undersigned for all pretrial matters. (Docket no. 10). The court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(e). This matter is now ready for ruling.

Petitioner raises several claims in his habeas petition. He alleges first that trial counsel rendered ineffective assistance by: (1) unreasonably attacking a witness (Krystal Roe) resulting in the revelation that Petitioner had behaved violently in the past and failing to object or request a cautionary instruction regarding this testimony; (2) failing to bring out when examining Petitioner and when cross-examining Thomas Gostias information concerning Petitioner's claim that he did not know Gostias and that Gostias had never been to his home; and (3) failing to object to improper jury instructions that allegedly eliminated "not guilty" as a juror choice, failing to object to the court receiving and sending a note to the deliberating jury in the absence of Petitioner and counsel, and

failing to have those proceedings recorded.  Petitioner also claims that he should have been granted an evidentiary hearing in state court.  (Docket no. 1 at 3).

Petitioner's remaining grounds for relief are: Issue 2–the trial court denied him a fair trial by refusing to instruct the jury on the lesser included offense of manslaughter; Issue 3–the trial court denied him a fair trial by excluding defense character evidence; Issue 4–the trial court improperly instructed the jury by not giving the option of a not guilty verdict; Issue 5–the trial court improperly responded to a jury note requesting the read-back of testimony in the absence of Petitioner and counsel, and by not recording this event; Issue 6–appellate counsel rendered ineffective assistance by overlooking issues which should have been raised.  (*Id*. at 4-5).

Respondent argues that habeas review is barred because Petitioner fails to establish ineffective assistance of appellate counsel as cause and prejudice to excuse the procedural default of his claims or that the failure to review would result in a fundamental miscarriage of justice. (Docket no. 6 at 8).  Respondent also contends that Petitioner fails to establish ineffective assistance of counsel on appeal.  (*Id*. at 21-23).

### B.    Factual Background

Petitioner summarizes the evidence given at trial as follows:

> On February 12, 2002, Officer Michael Scanlon of the Detroit Police Department was stabbed to death in Redford Township. Several witnesses testified that in the days before the stabbing, Petitioner had bought or was in possession of a switchblade knife, Krystal Roe, Elizabeth Fisher, Patrick Mark, Christopher Bovee, and Petitioner Brian Bourne.
>
> Thomas Gostias testified that Petitioner had made statements that he hated police and wanted to stab them.  Mr. Gostias contacted police while in custody on his own criminal sexual conduct case, where he got a deal where he would testify against Petitioner and

plead to attempted felonious assault so he would not have to register as a sex offender.

Dr. Kanu Virani testified that the deceased had 8 stab wounds to the head, one to the neck, and one to the back. He had a gunshot wound to the arm.

Lt. Gary Hund of the Detroit police testified Off. Scanlon was on traffic control, and when an officer observes violations in one city he can pursue to another city.

Off. Richard Corey of the Redford police testified he was the first officer to arrive, that Jeff Leverenz met him and told him a policeman was shot in his backyard. He followed a trail of blood and found the deceased near the porch of a neighboring house, with no signs of life.

Julia Zielke, girlfriend of Jeff Leverenz, lived with him and his friend Donny Nelson at the house on 6 Mile Road. She heard Petitioner's loud car pull in the driveway. She later saw a police car with red and blue flashing lights in the driveway, and Petitioner being patted down. She told police that Off. Scanlon bashed Petitioner's head into the police car three times before Petitioner ran. She testified at the grand jury that the officer bashed Petitioner's head against the car two or three times. However, she amended that at trial to the police officer pushing Petitioner's head into the car using force.

She testified Petitioner elbowed Off. Scanlon and ran to the backyard. He followed and said stop or I'll kill you. Petitioner said "Why do he want to kill me?" She heard snow moving. She heard a shot, while Jeff was standing next to her. She ran upstairs where she saw Donny. She saw Brian walking off and asked him what happened. Brian said "The fucking cop just shot me."

After the incident, she [sic] Jeff and Donny fled from Redford to Ypsilanti, not to run from the police, but just because they were sick of everyone in Redford. Upon leaving, Jeff stole $7000.00 from his grandmother.

Geoffrey Leverenz testified he lived upstairs at 26470 6 Mile with his girlfriend Julia Zielke and friend Don Nelson. His grandmother, mother [sic] stepdad, and little sister lived downstairs. On February 12, 2002, he called Petitioner Brian Bourne for a ride to the store to buy cigarettes, and to discuss things missing from

-4-

Petitioner's trailer. Petitioner drove up in a black Firebird with a loud muffler. He testified he saw a police officer pull up behind him with red and blue flashing lights, and went to the back porch to tell Julia. He put on his shows [sic] and went to the front of his garage, and heard the officer tell Petitioner to put his hands on the car. Petitioner ran. The officer tackled Petitioner. Petitioner ran again and the officer said "stop mf or I'll kill you." Petitioner said "Why do you want to kill me?" Another struggle took place and he heard a gunshot.

When the police arrived the officer's car was gone, but Petitioner's car was still there. He went with a Redford officer to find the wounded officer. After the incident, he went to Ypsilanti with Julia and Don, but police had never told him not to leave town. He admitted stealing the $7000.00 from his grandmother.

The week before Krystal moved out from Petitioner, she took some items of his, including a large dagger, that Krystal gave to Don Nelson.

Donald Nelson testified he lived at Jeff's house. He heard Petitioner's car with the loud muffler arrive. A cop pulled up behind him and started frisking Petitioner. He saw the cop smacking Petitioner's head against the car. Petitioner began to run, they struggled on the ground, he heard a shot. Petitioner walked toward the cop car and said "The fucking cop shot me." Petitioner got in the police car and drove off.

Matthew Maurer, Wade Clay, and Amy Rector testified that Petitioner walked up to the emergency room at St. Mary's hospital and complained he was shot. Off. Shane Rebant testified he found a Detroit police semi-marked vehicle parked at the hospital, with no overhead lights, but with dashmount and grill lights. There was blood on the steering wheel. It was stipulated the blood in the car matched Petitioner.

Various officers testified to the scene at the house on 6 Mile Road and at the hospital.

Petitioner Brian Bourne testified that Krystal Roe moved out from him a couple days before the incident, and stole many items, including a big dagger, and title to his car. Jeff called Petitioner and said he had some of his possessions, and Petitioner should come and pick them up, and also give Jeff a ride to the store. After arriving at

-5-

Jeff's driveway, a car pulls in the driveway behind him and a man jumps out and says "What the fuck is your problem, asshole?" Petitioner asked "Who the hell are you?" and the man grabbed him and pushed him up against the car. The man was not in a police uniform, but was wearing a black coat and pants. The man hit Petitioner's head against the car hard, and made threats, and Petitioner ran. Jeff and Donny were outside by the garage watching, and Petitioner ran right by them toward the back yard. The man threatened to kill Petitioner, and Petitioner asked why, and believed the man was going to kill him. The main aimed his gun at Petitioner, and Jeff and Donny jumped the man from behind and [the] gun went off, striking Petitioner. Petitioner realized he was shot and went to the hospital, only his car was blocked in and he had to take the car blocking him, which he then realized was a police car. Petitioner had no knife and did not stab anyone. He denied having any grudge against the police. He never made the statements that Gostias claimed he made.

(Docket no. 1 at 15-19) (citations to the record omitted). Additional facts will be discussed when analyzing Petitioner's claims.

### C.    Standard of Review

Because Petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Among other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

-6-

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**D.    Analysis**

This court will analyze Petitioner's claims beginning with the non-ineffective assistance claims and then address the ineffective assistance of trial counsel claims. This court will address Petitioner's ineffective assistance of appellate counsel claims last because the strength of Petitioner's underlying claims affect the analysis of whether appellate counsel performed deficiently by not raising the issues on appeal.

**1.    Habeas Ground Two–Manslaughter Jury Instruction**

Petitioner claims that the trial court denied him a fair trial by refusing to instruct the jury on the lesser-included offense of manslaughter. (Docket no. 1 at 34-43). Petitioner requested such an instruction, but the trial judge denied the request after finding that nothing on the record supported the giving of the instruction. (Docket no. 7-9 at 72). Respondent relies upon *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc), for the proposition that the Constitution does not require a lesser-included offense instruction in non-capital cases. (Docket no. 6 at 14). In that case the court confronted the issue whether "the failure to instruct on lesser included offenses in noncapital cases [is] such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure?" *Bagby*, 894 F.2d at 797. The court found that "it is not an error of such character and magnitude to be cognizable in federal habeas corpus review." (*Id.*). Petitioner fails to successfully distinguish *Bagby*, and the non-habeas and death cases he cites are inapposite. (Docket no. 1 at 34-43; docket no. 8 at 7). Accordingly, this

-7-

claim has no substantive merit.  *See Jones v. Harry*, 2009 WL 275728 (E.D. Mich. Feb. 5, 2009)

(concluding that U.S. Supreme Court has not decided whether due process requires giving of jury

instruction on lesser-included offenses in non-capital cases, but Sixth Circuit has concluded that the

Constitution does not so require).

### 2.    Habeas Ground Three–Exclusion of Defense Character Evidence

Petitioner shows that during his counsel's cross-examination of Julia Zielke counsel

attempted to question Zielke about Petitioner's character.  Counsel asked Zielke if Petitioner "was

from your opinion a kind spirited person."  (Docket no. 7-7 at 22).  The prosecutor objected on the

bases that the question called for speculation and character evidence.  (*Id*.).  The court sustained the

objection.  (*Id*.).  Petitioner contends that this event violated state law and denied him due process

of law.  (Docket no. 1 at 29-31).  Respondent argues that the claim is not cognizable in habeas.

(Docket no. 6 at 16).

Habeas review does not ordinarily extend to state court rulings on the admissibility of

evidence. *Moore v. Tate*, 882 F.2d 1107, 1109 (6th Cir. 1989).  Only an erroneous evidentiary ruling

which renders a trial fundamentally unfair warrants a writ of habeas corpus.  (*Id*.).  This ruling did

not render Petitioner's trial fundamentally unfair.  Even if this witness had testified that Petitioner

possessed a kind spirit, Petitioner was given a full opportunity to present his defense which was that

someone other than he, namely his friends Leverenz and Nelson, attacked and killed Officer

Scanlon.[2]  *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (Constitution guarantees criminal

defendants a meaningful opportunity to present a complete defense).  Accordingly, this claim has

---

[2] Petitioner fails to proffer any testimony showing that the witness would have testified that
he possessed a kind spirit.

no substantive merit.

### 3.        Habeas Ground Four–Unanimous Verdict Jury Instruction

Petitioner contends in his fourth habeas ground for relief that the trial court improperly instructed the jury when it was explaining that the verdict must be unanimous because the court failed to give the jury the option of a not guilty verdict. (Docket no. 1 at 47-49). Respondent argues that Petitioner has failed to show that the instructions as a whole were so infirm as to render the entire trial fundamentally unfair. (Docket no. 6 at 15-16). Petitioner concedes in his Reply brief that the court "did mention 'not guilty' once at the beginning of his instructions." (Docket no. 8 at 8). In fact, when viewed as a whole,[3] the instructions fully informed the jurors that they could find Petitioner not guilty of the charges against him. The court instructed the jury that the accused "is presumed to be innocent," and that the defendant is entitled to "a verdict of not guilty unless you are satisfied beyond a reasonable doubt that he is guilty." (Docket no. 7-9 at 135). The court continued by stating that if the jurors found that the defendant was not guilty of murder first-degree premeditated, they should consider murder second-degree. (*Id*. at 149). Finally, when explaining the verdict form, the court noted that possible verdicts were not guilty for both charges. (*Id*. at 152). Accordingly, there is no substantive merit to Petitioner's claim that the trial court's jury instructions directed a verdict of guilty or negated the presumption of innocence.

### 4.        Habeas Ground Five–Trial Court Response to Jury Note

---

[3] The instruction may not be viewed in isolation, but must be "considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Moreover, with respect to this claim and all claims made by Petitioner, errors of state law are not grounds upon which habeas relief may be granted; this court in this proceeding is concerned only with errors of federal law. *See Gilmore v. Taylor*, 508 U.S. 333, 342, 344 (1993); *Estelle*, 502 U.S. at 67 ("federal habeas corpus relief does not lie for errors of state law").

Petitioner contends that the trial court's response to a note from the deliberating jury violated his Sixth Amendment rights to counsel and right to be present during all stages of his trial. (Docket no. 1 at 50 - docket no. 1-2 at 6). The trial court received a note from the deliberating jury and responded by sending a note to the jury in the absence of counsel from either side and the Petitioner. (Docket no. 7-9 at 157-59). The note requested a read-back of the testimony of Jeff Leverenz, Don Nelson, Julia Zielke, Brian Bourne, and Krystal Roe. (*Id*.). Defense counsel stated that if he had been present he would have objected to the court's response of advising the jury to "rely on their collective memories,"and would have asked that the court read back the requested testimony. (*Id*. at 158). The court stated that the "note from the jury as well as the Court's response will be made a part of this record."[4] (*Id*. at 159). The prosecutor said that she thought "it was appropriate that the Court send in a note asking them to rely on their collective memory." (*Id*.). The notes have not been presented to this court by either party, however neither party shows that the trial court's representation, that the jury sent out a note requesting that the above testimony be read back and that the court responded by sending a note advising the jury to rely on their collective memories, is inaccurate. Therefore, the Court finds that these are the facts to be analyzed.

Immediately apparent is that this is not the same factual scenario confronting the court in *French v. Jones*, 332 F.3d 430 (6th Cir. 2003), upon which Petitioner relies. In *French*, the trial judge brought the deadlocked jury back into the courtroom without the presence of the defendant's counsel and gave the jurors a supplemental jury instruction which was unlike the standard deadlocked jury instruction. 332 F.3d at 434. The jury had previously sent the court two notes

---

[4] Petitioner has not shown that these notes were not placed in the record, therefore the court rejects Petitioner's claim that the failure to record this exchange is a separate constitutional violation.

stating that they were deadlocked and had been re-instructed with standard instructions. (*Id*.). The court found that the district court's granting of the writ was appropriate due to the lack of counsel during a critical stage of the trial. (*Id*. at 439). In the present case the jury did not state that it was deadlocked, they were not brought back into the courtroom, and there was no new instruction given and especially no instruction not previously approved by counsel. Therefore, *French* does not control the outcome of this claim.

Even if *French* presented the same facts, this Court may grant the writ based solely on U.S. Supreme Court decisions, and not circuit court decisions. *See Owens v. Guida*, 549 F.3d 399, 404 (6th Cir. 2008). *Owens* makes clear that a state court decision is contrary to clearly established federal law if the state court arrives at a conclusion that is opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. (*Id*. (citing *Williams v. Taylor*, 529 U.S. 362, 413 (2000))).

In *United States v. Cronic*, 466 U.S. 648, 659 (1984), the Supreme Court found that absence of counsel during a critical stage of a criminal trial is a structural error which entitles the defendant to an automatic reversal without the need to show prejudice. Petitioner contends that the error was structural in his case. Respondent argues that Petitioner's case is more similar to *Rushen v. Spain*, 464 U.S. 114 (1983). In *Rushen*, the district court issued the writ after finding that the petitioner's right to be present during all critical stages of the proceedings and his right to be represented by counsel were violated. The Ninth Circuit court of appeals affirmed on the basis that an unrecorded ex parte communication between trial judge and juror can never be harmless error. (*Id*. at 117). The Supreme Court "emphatically disagree[d]." (*Id*.). A juror had twice gone to the judge's chambers

-11-

to tell him of her personal acquaintance with the murder victim of someone that a defense witness had identified as a police informant. (*Id*. at 116). The judge asked her if her disposition of the case would be affected, and she responded that it would not. The judge told her not to be concerned and that the matter probably would not be mentioned again. The judge made no record of either conversation, and did not inform the defendants or their counsel about the conversations. (*Id*.). The Supreme Court found that the lower federal courts should have found that the alleged constitutional error was harmless beyond a reasonable doubt. (*Id*. at 121).

*Rushen* is distinguishable because it does not involve the judge making a ruling and giving direction to the entire jury as in Petitioner's case. Respondent also argues that Petitioner fails to identify any Supreme Court precedent holding that automatic reversal is warranted where a trial court exercises its discretion to deny a request to rehear testimony in the absence of both parties. (Docket no. 6 at 20).

The factual scenario of this case falls somewhere between *Rushen* and *French*. Courts considering the same or substantially the same factual scenarios have found that errors such as in this case are not structural errors warranting automatic relief, but are subject to harmless error analysis. In *United States v. Toliver*, 330 F.3d 607 (3rd Cir. 2003), the court considered whether the defendant's Fifth and Sixth Amendment rights to counsel and to be present at every stage of trial were violated when during jury deliberations the district court responded to a jury request without first notifying either the defendant or defense counsel. (*Id*. at 608). The request was to have the testimony of two witnesses on a certain point re-read. (*Id*. at 609). The court sent an excerpt of the transcript to the jury. (*Id*.). The court concluded that "errors in circumstances like this case can be harmless" and so found. (*Id*. at 617).

-12-

In *Toliver*, the court noted that in *United States v. Widgery*, 778 F.2d 325 (7th Cir. 1985), the court found that the scenario presented – that the trial judge had received during jury deliberations two notes from the jury and in response to the second note told the bailiff to tell the jury foreman to "keep on trying" in the absence of counsel – may violate Fed. R. Crim. P. 43(a) but not the Constitution. *Toliver*, 330 F.3d at 615. The *Toliver* court disagreed that only an infringement of statutory rights occurred but agreed that harmless error analysis applies to the violation of the right to counsel. (*Id.*).

In *Musladin v. Lamarque*, 555 F.3d 830 (9th Cir. 2009), the Ninth Circuit confronted an almost identical factual situation to Petitioner's case. In that habeas case the jury sent the judge a note requesting clarification of "malice" in the elements of murder. The trial judge notified counsel but before defense counsel arrived the court returned the note to the jury with the written direction to "refer to the instructions." (*Id.* at 835). The petitioner claimed a violation of his Sixth Amendment right to counsel. (*Id.*). The Ninth Circuit concluded that if it were reviewing the question whether petitioner was denied counsel at a "critical stage" under *Cronic*, it would find that petitioner's right was violated. (*Id.* at 842). However, applying the AEDPA standard of review, the court could not find that the state court's decision was contrary to or an unreasonable application of the *Cronic* standard:

> Although defense counsel plays a crucial role in formulating *any* mid-deliberation communication to the jury by the trial judge, where the judge simply directs the jury to his previous instructions, the potential impact of defense counsel's inability to participate is significantly lessened, because defense counsel played a role in the formulation of those instructions. In such circumstances, the jury receives only such information as was formulated with defense counsel's participation. Although we do not believe that defense counsel's prior participation is sufficient to render a mid-deliberation communication to the jury less "critical" for purposes of the *Cronic*

-13-

> analysis, we cannot say that it would be unreasonable for a state court
> to so conclude.  Accordingly, we are not free to hold that the state
> court's decision to require a demonstration of prejudice resulting
> from the denial of counsel here was objectively unreasonable.

*Musladin*, 555 F.3d at 843 (footnote omitted).

Finally, in *United States v. Harris*, 9 F.3d 493 (6th Cir. 1993), the Sixth Circuit confronted a substantially similar factual scenario in the context of a federal trial.  In *Harris*, the jury sent a note to the court requesting a copy of the jury instructions for entrapment.  Without contacting the parties, the court "responded by providing the jury with a complete written set of all of the jury instructions read by the court."  (*Id*. at 499).  Harris argued that this was prejudicial error.  The court found that under Fed. R. Crim. P. 43 (requiring the defendant's presence at every stage of the trial), which the government conceded was violated, the error must be evaluated to determine "whether there is 'any reasonable possibility of prejudice.'" (9 F.3d at 499 (quoting *United States v. Giacalone*, 588 F.2d 1158, 1165 (6th Cir. 1978))).  The court found no prejudice noting that the court did not make a substantive response to the jury's note, but instead "perfunctorily submitted the jury instructions that had been read to the jury previously."  (9 F.3d at 499).

Although the *Harris* court did not discuss the constitutional implications of the issue, the history of the "reasonable possibility" standard may be traced back to *Wade v. United States*, 441 F.2d 1046, 1050 (D.C. Cir. 1971) in which the court noted that in considering whether this standard is met the court must keep in mind that defendant's presence at all stages of the trial has "constitutional prestige in the Sixth Amendment guarantee of the right to confront adverse witnesses."  (*Id*.).  Therefore, the "reasonable probability" standard has its roots in the defendant's Sixth Amendment right to be present during the critical stages of his trial.

This Court need not decide whether the trial judge's receiving from and sending to the jury

-14-

a note was a "critical stage" under *Cronic*. Based on the above cases, the Third and Seventh Circuits likely would find that it was not a critical stage, and the Ninth Circuit may find that it was a critical stage. The Sixth Circuit, based on *French*, would find a critical stage if the court gives a supplemental instruction to a deadlocked jury. However, following *Harris*, it is arguable that the Sixth Circuit would find that a court sending a note to the jury without a substantive response is not a critical stage. If the state courts had addressed and rejected this claim on its merits, Petitioner could likely not show that such a decision would support habeas relief either because a finding that the event was not a critical stage would not be unreasonable, or because a finding that a showing of prejudice is required and no such showing was made would not be unreasonable. However, the state courts found that this claim was procedurally defaulted. Petitioner fails to overcome this default, as will be discussed later in this Recommendation. Therefore, ultimately no relief may be given on Petitioner's claims of violations of his right to counsel and right to be present during this stage of his trial.

### 5.    Habeas Ground One–Ineffective Assistance of Trial Counsel

Before turning to the specific issues of ineffectiveness, this Court notes that counsel's performance must be viewed in the context of the prosecution's very strong evidence against Petitioner at trial. The evidence leaves no doubt that Petitioner was driving his vehicle and was stopped by Officer Scanlon on the night the officer was stabbed to death. The real question was whether Petitioner stabbed Officer Scanlon or Jeff Leverenz and Don Nelson stabbed him. The jury heard substantial evidence that Petitioner had purchased a switchblade knife a few days before the stabbing, a knife that he always carried and played with constantly. Petitioner's manager at the service station where Petitioner worked as a mechanic's helper testified that on the afternoon of the

stabbing he had to order Petitioner to put the knife away because Petitioner was "unnerving" some of the customers by repeatedly triggering the spring release of the knife. (Docket no. 7-5 at 125-129). Petitioner put the knife in his pocket. (*Id*.). A co-worker of Petitioner testified that through talking with Petitioner she knew that he liked to "race cars" and "run from the police." (*Id*. at 114).

There was substantial testimony that because of the car's flashing blue and red lights, the uniform of the officer, the reflective markings on the car's doors, and because Petitioner was about to be patted down, Petitioner knew the man from the car was indeed a police officer, despite Petitioner's testimony otherwise. The jury could easily have believed that Petitioner was being stopped by the officer because of the loudness of the muffler on the vehicle or for some other traffic offense, and that Petitioner had the knife in his pocket at the time. There was testimony that when Petitioner bought the knife the vendor sold it to him without the spring in place because "he could not sell it with the spring." (Docket no. 7-5 at 82). The jury could have concluded that the switchblade was illegal.

When he was being frisked the jury could have believed that Petitioner knew that the officer would find and confiscate the knife. Petitioner ran in an attempt to escape but could not get away. Petitioner's defense was that the other two men attacked the officer after Petitioner had walked away to get into the police car to go to the hospital. However, the evidence was that Jeff Leverenz called 911 and met the first officer on the scene and directed him to the bloody area which eventually led to Officer Scanlon. The responding officer testified that Leverenz did not appear to have blood on him or anything of that nature. (Docket no. 7-6 at 102-03). There was testimony from Julia Zielke that neither Leverenz nor Nelson were in the back yard at the time that she heard the gun shot. (Docket no. 7-6 at 163-64). Of course, both Leverenz and Nelson testified that they were not

-16-

involved in the attack.

A major piece of evidence not accounted for by Petitioner's testimony is that a weapon which the jury could have found to have belonged to Officer Scanlon was found in the roadway a block and a half from the hospital where Petitioner was found. The officer's patrol car was found in the parking lot of the hospital with Petitioner's blood inside on the steering wheel. The logical conclusion is that Petitioner threw the weapon out the window of the car as he approached the hospital. The story that Petitioner gave at the hospital, that he had been shot by a crackhead, would suggest to the jury that Petitioner was hiding the truth. Finally, the web of Petitioner's right and left hands had gunshot residue on them. This circumstance is also not explained by Petitioner's testimony. The murder weapon was never found.

In short, trial counsel faced an almost impossible set of facts in an attempt to convince the jury that Petitioner did not stab to death Officer Scanlon. In the context of these facts, the Court will examine counsel's conduct.

### a.    Counsel's cross-examination of Krystal Roe

Petitioner claims that counsel's cross-examination of prosecution witness Krystal Roe constitutes deficient conduct because Roe's direct testimony was not sufficiently prejudicial to justify counsel's vigorous cross-examination during which Roe testified that Petitioner had "beat her up" and that she moved out of Petitioner's home because of the "abuse." (Docket no. 1 at 21). Counsel also should have objected to the testimony and requested a cautionary instruction, according to Petitioner. (*Id*. at 25).

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687

-17-

(1984).  To establish ineffective assistance of counsel, Petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id.* at 687.  These two components are mixed questions of law and fact.  *Id*. at 698.  Further "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (citations omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  With respect to the prejudice prong of the *Strickland* test, the ultimate inquiry is "whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

Courts generally entrust cross-examination techniques to the professional discretion of counsel.  *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002).  "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available."  (*Id.*).

Petitioner has failed to show that counsel performed deficiently in the cross-examination of

-18-

Roe.  In counsel's cross-examination of Krystal Roe he obtained very important information.  That information was that Roe gave Donald Nelson a knife at the home of Jeff Leverenz.  (Docket no. 7-5 at 95).  Counsel asked, "Isn't it true that you gave a knife to Don Nelson?"  After asking whether she had not previously answered, Roe replied, "I said yes."  (*Id.*).  Counsel then asked, "Isn't it true that–and where was it that you gave Don Nelson that knife, what location?"  Roe replied, "I believe it was in Jeff's house."  (*Id.*).  Petitioner's defense at trial was that Don Nelson and Jeff Leverenz had attacked Officer Scanlon.  It was therefore critical to place these two persons at the scene (which Petitioner did by his testimony) and to place a knife (the murder weapon) in their possession.  Petitioner would testify that he was not armed that night.  Therefore, counsel knew he had to get a knife in the possession of these two men to support Petitioner's defense theory.  Counsel did this through the testimony of Krystal Roe.  Roe's taking of the knife from Petitioner's home was intertwined with Roe leaving Petitioner's home because of the "abuse."  (*Id.* at 96-102).

Counsel knew that there was overwhelming evidence that Petitioner had scuffled with the officer and run from him.  Counsel could have reasonably believed that getting the testimony from Roe that she had given a knife to Don Nelson was sufficiently important to risk bringing out this testimony of domestic violence.  The abuse testimony, counsel likely could have further believed, would not significantly prejudice Petitioner given the overwhelming evidence that he had resisted the officer's attempts to search and subdue him.  Counsel acted reasonably by not objecting to the testimony of abuse and not requesting a cautionary instruction.  This would simply draw attention to that portion of Roe's testimony instead of to the portion about the knife.  Therefore, Petitioner has failed to show that counsel performed deficiently in his cross-examination of Roe.  *Strickland*, 466 U.S. 668.  Moreover, given the overwhelming evidence against Petitioner concerning the events of

-19-

the night in question, there is no reasonable probability that but for the testimony of domestic violence occurring at a different time and place, the result of his trial would have been different. Petitioner has therefore also failed to establish the prejudice necessary to show ineffective assistance of counsel. *Strickland*, 466 U.S. 668.

### b.   Cross-examination of Thomas Gostias

Petitioner claims that counsel failed to adequately cross-examine Thomas Gostias and bring out Petitioner's claims that he did not know Gostias at all, and that Gostias had never been to Petitioner's house. Gostias was accused of criminal sexual conduct. He testified against Petitioner claiming to be a good friend and recounting that Petitioner had said that he hated police and he would shoot or stab or attack the next officer that pulled him over. Gostias received some consideration on his charges for his testimony. Petitioner submits an affidavit in which he states that he does not know Gostias and that he told counsel to ask questions to bring this fact out to the jury. (Docket no. 1 at 26). Petitioner also complains that counsel should have questioned him about not knowing Gostias. (*Id*.).

The testimony of Gostias was sufficiently detailed and specific that counsel, by presenting the type of argument Petitioner requests (that he never knew Gostias), ran the risk of losing all credibility with the jury. For instance, Gostias testified that he and Petitioner met in the parking lot of Petitioner's apartment in November 2001. (Docket no. 7-5 at 207). Gostias stated that he would meet Petitioner often at Petitioner's work. (*Id*. at 209). They had met in the parking lot of a bar in downtown. (*Id*.). In December 2001, although he did not know where Petitioner was living at that time, he saw Petitioner at his work. (*Id*. at 210). Gostias testified that he and Petitioner would go for rides to Belle Isle and Mt. Pleasant. (*Id*. at 210). Gostias also gave the names of third parties

-20-

who were present when he and Petitioner were together.  He said that Sally, one of Petitioner's former girlfriends, was present at Petitioner's apartment with them.  (*Id*.).  Dave Lowrey was present when Gostias went to inspect a car that Petitioner was selling.  (*Id*. at 211).  Kevin Brown was present during some of their conversations.  (*Id*. at 212).  Petitioner fails to proffer any testimony from these persons showing that the testimony of Gostias was inaccurate.

Counsel could have reasonably determined that the risk of not being able to convince the jury that Gostias was lying about knowing Petitioner was too great.  Instead, counsel aggressively cross-examined Gostias regarding the nature of his criminal charges and the prospect that Gostias was simply testifying to whatever the prosecutor wanted because he was hoping for a break in his case.  Petitioner has failed to establish that this strategy constituted deficient performance.  Moreover, given the overwhelming evidence of the events on the night of the murder, Petitioner has failed to show that presenting testimony that he did not know Gostias or that a different method of cross-examining Gostias would have created a reasonable probability of a different outcome to his trial.  He has therefore failed to establish ineffective assistance.  *See Strickland*, 466 U.S. 668.

### c.     Objections to jury instructions

Petitioner claims that counsel should have objected to the court's jury instructions which supposedly eliminated not guilty as a possible verdict.  (Docket no. 1 at 28).  In section 3 above, the discussion of habeas ground 4, this Court determined that Petitioner's claim that the court had improperly instructed the jury by eliminating the not guilty verdict had no factual support.  Therefore, counsel did not perform deficiently by failing to object.  Moreover, this failure could not have prejudiced Petitioner.  Petitioner has therefore failed to establish ineffective assistance of counsel on this basis.  *Strickland*, 466 U.S. 668.

-21-

### d.   Objections to trial court proceeding in absence of counsel and not recording proceedings

Petitioner also claims that trial counsel rendered ineffective assistance by failing to object to the trial court proceeding in his absence and sending the note to the jury denying their request for a read back of testimony.  (Docket no. 1 at 28).

Because counsel was not present when the court sent the note to the jury, counsel did not perform deficiently by not objecting at the time.  When counsel learned of the event he ensured that the record reflected that he would have objected and would have asked that the read back requested be provided.  (Docket no. 7-9 at 158).  Moreover, as noted above, the trial court states in the record that the notes exchanged would become a part of the record, and there is no showing that this was not accomplished.  Counsel's objection was not specifically based on counsel's absence or on Petitioner's absence.  In its context, however, this failure does not rise to the level that warrants a finding that counsel was not functioning as counsel guaranteed by the Sixth Amendment.  *See Strickland*, 466 U.S. 668.  Moreover, there is no reasonable probability that, absent counsel's error, the factfinder would have had a reasonable doubt respecting guilt.  Accordingly, Petitioner has failed to show deficient conduct by counsel or resulting prejudice.  *See Strickland*, 466 U.S. 668.

### e.   Failure of state courts to hold evidentiary hearing

Petitioner complains that the state courts failed to hold a hearing on his ineffective assistance of counsel claims.  (Docket no. 1 at 30-33).  Petitioner sought a hearing on his motion for relief from judgment, but the trial court denied that request.  (Docket no. 7-13 at 1).

The purpose of an evidentiary hearing is to resolve a factual dispute that, if resolved in the petitioner's favor, would entitle him to relief.  *See Goodwin v. Johnson*, 132 F.3d 162, 178 (5th Cir. 1997).  Petitioner fails to cite any material factual disputes that require a hearing, however.  (Docket

no. 1 at 30-33). He contends that the "opinion of the trial judge that failure to challenge Gostias was not prejudicial" cannot "substitute for a factual determination by a jury properly presented with the evidence needed to judge the credibility of Gostias." (*Id*. at 32). Yet, the determination of whether prejudice resulted from counsel's alleged deficient conduct is not a purely factual determination. *See Smith v. Jago*, 888 F.2d 399, 407 (6th Cir. 1989) ("both the prejudice and performance components of the *Strickland* ineffectiveness inquiry are mixed questions of law and fact"). Petitioner fails to show that any underlying facts in this legal determination of prejudice were resolved against him by the state courts absent a hearing. Even assuming that Petitioner's factual allegations are true, such as that he told his attorneys that he did not know Gostias, had never conversed with him, and that Gostias had never been to Petitioner's home or in his car (docket no. 1 ex. 1), if a court assumes that these facts are true and still determines legally that no prejudice is shown, there is no need for an evidentiary hearing. Accordingly, Petitioner has failed to show any cognizable error in the state courts' denials of his requests for a hearing.

### 6.    **Habeas Ground Six–Ineffective Assistance of Appellate Counsel**

Petitioner claims that appellate counsel, who was different from trial counsel, rendered ineffective assistance by failing to raise several allegedly meritorious grounds for relief on appeal. (Docket no. 1-2 at 8-15). The issues raised by Petitioner are: (1) failure to raise trial counsel's allegedly deficient performance in the cross-examination of Krystal Roe; (2) failure to raise trial counsel's allegedly deficient performance in the cross-examination of Gostias and the related direct examination of Petitioner; (3) failure to raise the failure of the trial court to give a jury instruction on manslaughter; (4) failure to raise the trial court's denial of the introduction of character evidence; (5) failure to raise the allegedly erroneous trial court jury instruction which eliminated the possibility

-23-

of a not guilty verdict; and (6) failure to raise the errors related to the trial judge's rejection of the jury's request for a read-back of testimony and the related issues of the absence of counsel and failure to record this incident.  (*Id*. at 8).

Counsel on appeal raised several claims.  He claimed that the evidence introduced during Petitioner's preliminary examination did not support him being bound over for trial on first-degree murder charges.  (Docket no. 1 ex. 2).  Counsel raised the issue that portions of the testimony of Thomas Gostias were not admissible.  In addition, counsel claimed that the evidence was insufficient to support Petitioner's convictions, and that a directed verdict should have been granted.  (*Id*.).

Counsel has no constitutional duty to present every non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  The same *Strickland* standard applies as for other claims of ineffective assistance.  *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004).  With respect to showing prejudice, "a defendant must show a reasonable probability that, but for his counsel's defective performance, he would have prevailed on appeal."  (*Id*. at 194).

In the above discussions this Court has found that there is no merit in Petitioner's claims that trial counsel rendered ineffective assistance in the cross-examination of Krystal Roe (section 5(a)) and Thomas Gostias, including the direct examination of Petitioner regarding his allegations about Gostias (section 5(b)).  Based on those discussions, Petitioner has failed to show that appellate counsel rendered ineffective assistance in failing to raise these issues on appeal.  *See Strickland*, 466 U.S. 668.

Petitioner also contends that appellate counsel should have raised the issue of the trial judge's refusal to instruct the jury on manslaughter.  The trial judge found that the evidence presented did not support such an instruction.  (Docket no. 7-9 at 72).  Petitioner's version of the

events would not support such an instruction because he contends that he was not involved in stabbing Officer Scanlon.  Although this factor may not preclude his requesting and being granted the instruction, Petitioner states in his brief that Michigan law at the time of Petitioner's appeal regarding instructions on lesser-included offenses "would appear to defeat such an issue."  (Docket no. 1 at 35).  It was only after the decision in *People v. Mendoza,* 664 N.W.2d 685 (Mich. 2003), that this issue became viable, according to Petitioner.  Because state law at the time of Petitioner's appeal appeared to defeat the issue and because the instruction would have been inconsistent with Petitioner's version of the events, appellate counsel did not render ineffective assistance by not raising the issue. *See Strickland*, 466 U.S. 668.

Petitioner next claims that appellate counsel should have raised the issue of the trial judge's exclusion of evidence of Petitioner's "kind spirit."  (Docket no. 1 at 43).  Respondent argues that this evidentiary ruling was correct under state law because the proper time to admit character evidence is in the party's case-in-chief and this attempt was made during cross-examination. (Docket no. 6 at 18).  Petitioner does not dispute Respondent's showing that the trial judge's sustaining of the prosecution's objection during cross-examination was proper under state law. (Docket no. 8).  Moreover, even if the trial judge's ruling was improper, Petitioner has failed to show that a reasonable probability exists that he would have prevailed on appeal had this issue been raised.  *See Mapes*, 388 F.3d at 194.  The evidence against him was so great that the reasonable probability is that any error found would have been determined to have been harmless.  This is especially so because there is no showing what the response to this question would have been.

Petitioner next claims that appellate counsel rendered ineffective assistance by failing to raise on appeal the issue of the trial judge's instructions which supposedly removed the possibility of a

-25-

not guilty verdict. This Court addressed this issue above and found that the trial judge's instructions adequately informed the jury that a not guilty verdict was possible on all charges against Petitioner. (Section 3–Habeas Ground Four). Based on that discussion, Petitioner has failed to show that appellate counsel rendered ineffective assistance. *See Strickland*, 466 U.S. 668.

Petitioner's final claim is that appellate counsel rendered ineffective assistance by failing to raise on appeal the issue of the trial judge's denial of the jury's request for a read-back of the testimony of several witnesses. The trial judge denied that request and sent the jury a note advising the jurors to rely on their collective memories. This was done in the absence of Petitioner and his counsel. Petitioner argues that the court violated Mich. Ct. R. 6.414(H) "by refusing the jury's reasonable request." (Docket no. 1-2 at 1).

The pertinent section of the court rule simply states that the "court may give additional instructions that are appropriate" after the jury begins deliberations. The state courts hold that a trial judge may, consistent with this rule, refuse a request for testimony from the jury as long as the court does not foreclose the possibility of the testimony being reviewed at a later time. *People v. Carter*, 612 N.W.2d 144, 148 & n.10 (Mich. 2000). Petitioner's argument is that the trial judge advised the jurors to rely on their collective memories. There is no allegation that the trial court foreclosed the possibility of reviewing the testimony at a later time. Therefore, Petitioner has failed to show that this was a viable claim for appellate counsel to raise on appeal.

With regard to the absence of counsel and the defendant and possible constitutional issues, appellate counsel reviewing the transcript would have seen that trial counsel failed to clearly record an objection on these bases. (Docket no. 7-9 at 158-59). Counsel objected on the basis that he would have requested that the testimony be read back. (*Id.*). Appellate counsel could have

-26-

reasonably believed that these alleged errors were not properly preserved and could not survive a plain error analysis. *See People v. Bell*, 2008 WL 4958716 (Mich. Ct. App. Nov. 20, 2008) (errors not properly preserved reviewed for plain error–error resulting in conviction of actually innocent defendant). Even if preserved, appellate counsel could have reasonably concluded that these claims lacked merit because they were harmless errors. Moreover, as stated above the transcript of trial shows that the notes were preserved. Counsel could have reasonably believed that any claim that the trial court improperly failed to record the event had no merit. Petitioner has failed to show ineffective assistance of appellate counsel. *See Strickland*, 466 U.S. 668.

### 7.    Procedural Default

In addition to the above findings, Petitioner procedurally defaulted some of his claims. The first time that Petitioner raised any of the claims in this habeas petition to the state courts was in his post-conviction motion for appropriate relief. Petitioner argues that the treatment of those claims by the state courts fails to show a procedural default. However, claims raised in his motion for appropriate relief which could have been raised earlier are procedurally defaulted. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005) (finding that the procedural bar of Mich. Ct. Rule 6.508(D), cited by the state courts in denying Petitioner relief, is adequate and independent ground to foreclose habeas review of federal claims). Petitioner could have raised all of his claims except his ineffective assistance of counsel claims prior to his post-conviction motion. The above discussion shows that Petitioner failed to show cause and prejudice to excuse his default because there is no merit to his claims of ineffective assistance of appellate counsel. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (claims forfeited under state law may support federal habeas relief only if prisoner demonstrates cause for the default and prejudice from the asserted error).

Accordingly, Petitioner's claims other than his ineffective assistance of counsel claims are barred by his procedural default of them in the state court.[5]

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of an objection, the opposing party must file a concise response

---

[5] A federal court need not address the procedural default issue before deciding against a petitioner on the merits.  *See Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008).

-28-

proportionate to the objections in length and complexity.  The response must specifically address

each issue raised in the objections, in the same order and labeled as "Response to Objection #1,"

"Response to Objection #2," etc.

Dated: March 18, 2009                        s/ Mona K. Majzoub
                                             MONA K. MAJZOUB
                                             UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

    I hereby certify that a copy of this Report and Recommendation was served upon Brian
Bourne and Counsel of Record on this date.

Dated: March 18, 2009                        s/ Lisa C. Bartlett
                                             Courtroom Deputy